OPINION OF THE COURT
Bellacosa, J.
 A detective may not be permitted to testify that a person being investigated and queried about the commission of a crime, who was not shown to understand English, responded with a high shrug of the shoulders. Comment by the prosecutor in summation compounded the prejudicial inferences of guilt which the jury was allowed to draw from this gesture. Further, in a rape case where the accused and the *431 victim knew one another and consent was in issue, it is reversible error to instruct the jury on both an original and an amended version of a statute prescribing the quantum of force required, leaving the jury to select on its own the one to be applied. Finally, the failure of the court over a period of three hours to satisfy the jury’s request for a readback of the victim’s cross-examination and the court’s acceptance of a verdict without an inquiry as to whether that unsatisfied request had any continuing relevance for the jury was also reversible error. These serious errors compel a reversal and a new trial.
When the victim had a child, her aunt, with whom defendant roomed, arranged to have defendant assume the victim’s nightly job of cleaning a union hall. Three months later when the victim returned to her job, she and defendant agreed to share the work and the wages, which they did for one week. Then, one evening, upon the completion of the cleaning chores, defendant propositioned the victim. She declined his overtures. There is evidence that defendant forced the victim, whose infant was with her, to submit to oral and vaginal intercourse at the work site. The victim eventually convinced defendant that they should leave and, once on the street, she sought and received assistance. After undergoing medical examination and providing the police with a statement, the victim showed the police where defendant lived.
On the People’s direct case, one of the arresting officers testified that they approached defendant at the victim’s aunt’s house but it was very difficult to converse with him; defendant indicated he did not speak English well. At trial, defendant required the assistance of an interpreter. The officer also testified, over objection, that when defendant was told of the nature of the accusation against him, he responded with a high shrug of his shoulders.
Lourido was indicted for rape in the first degree, sodomy in the first degree, and endangering the welfare of a child. At trial, he asserted the defense of consent. The victim testified to the facts of the sexual assault. On cross-examination, she admitted that she had known defendant for months while on direct examination she had stated they did not meet until they began working together. She testified that before trial she had attempted to withdraw the charges. In rebuttal, the defense established that the victim’s medical examination indicated recent intercourse but no evidence of force. On *432 recall, the two police officers testified that the victim did not mention being forced to commit sodomy even when specifically questioned on the topic.
In summation, the prosecutor accented the defendant’s bodily reaction upon initial interrogation and arrest and characterized the shrug, over objection, as "an indicator of the defendant’s having committed the crimes charged”.
The court’s instruction first defined the forcible element of rape as compulsion by either use of physical force or a threat, express or implied, which places a person in fear of her or another’s immediate death, injury or kidnapping. That definition was based on the amended statute as of the time of trial. The tougher prosecutorial burden in this respect which existed at the time of the crime was not mentioned. Both trial counsels pointed this error out to the court. The defense attorney objected specifically that his client was subjected to an ex post facto application and requested the court to instruct the jury to disregard the earlier charge and apply the correct one. The jury was subsequently instructed: "Ladies and gentlemen of this jury, it has been brought to my attention that his act occurred on May 18, 1983. However, the definition that I gave you as regards forcible compulsion became a law on July 15, 1983. Now I am going to give you the definition of 'forcible compulsion’ as it existed in May”. The definition at the time of the offense, more favorable to the defendant, required force which is capable of overcoming earnest resistance or a threat expressed or implied that places a person in fear of her or another’s immediate death, injury, or kidnapping. The court at no time told the jury to disregard the erroneous previous instruction and left them to fend for themselves based on the above-quoted portion.
During deliberations, the jury requested a readback of the victim’s cross-examination and the cross-examination testimony of the two police officers who interrogated the victim. While the requested testimony was being searched for by the court reporter, some three hours after the request, the jury sent word it had reached a verdict. The defense objected that the jury had been allowed to continue to deliberate during the time that the readback request was pending and asked the court to inquire whether the jury wanted the requested sections of cross-examination testimony read before delivering the verdict. The court denied the application, made no inquiry of the jury, and accepted its verdict finding the defendant *433 guilty of rape in the first degree but acquitting him on the charges of sodomy and endangering the welfare of a child.
The Appellate Division affirmed the judgment of conviction (124 AD2d 598). It reasoned that evidence of the "high shrug” was admissible as a demonstrative act evincing the defendant’s state of mind, citing two precedents, Greenfield v People (85 NY 75) and Linsday v People (63 NY 143). The forcible compulsion charge was held adequate because it was implicit in the introductory remark that the subsequent definition should be applied. Finally, that court held that defendant was not prejudiced by the failure to comply with the readback request since it was apparent that the jury sought the read-back to resolve questions regarding the alleged acts of sodomy and endangering the welfare of a minor and he was acquitted on each of these charges.
Defendant argues that the use of the testimony and the summation comment of the prosecutor regarding the shoulder shrug violated his rights; that the court’s varying instructions on forcible compulsion constituted reversible error; and that the court should not have allowed the jury to continue to deliberate and should not have accepted the jury verdict without providing a readback of the requested testimony.
An individual’s reaction to a police officer’s accusatory query is inadmissible as evidence of guilt, state of mind or as a demonstrative act unless at the threshold the People demonstrate that the person heard the assertion and comprehended its implications.
Declarations or demonstrative acts in response to an accusatory or inculpatory assertion, made in the presence of the accused, which may be otherwise inadmissible on constitutional or Miranda (384 US 436) grounds, may nevertheless be received into evidence in certain instances but only for the limited purpose of establishing a relevant demonstrative response of the affected party (People v Cascone, 185 NY 317, 324). In People v Cascone (supra), the victim’s deathbed statement, written in Italian in response to a question asked in Italian, was shown to the defendant. We held the statement and Cascone’s demonstrative response of shrugging his shoulders inadmissible. Applying People v Kennedy (164 NY 449, 456) and People v Smith (172 NY 210, 232) on the admissibility of an accused’s silence in the face of an inculpatory statement made in his presence, the court in Cascone reasoned that since it was not shown that the defendant knew and fully *434 comprehended the effect of the question asked or the written answer, the victim’s answer was incompetent for the purpose of establishing a foundation upon which to show the defendant’s demonstrative response (People v Cascone, supra, at 329-330).
Contrast this with People v Ferrara (199 NY 414), where we held that an accomplice’s declaration "[tjhat’s the man that done the cutting” (id., at 430) and defendant’s shoulder shrug response were admitted because defendant Ferrara heard the statement from a few feet away, understood the import of the words, and was in no way prevented from responding (id., at 430). The evidentiary rule which has evolved is that an accused’s response to an accusatory statement or declaration cannot be deemed an "admission if the accusation was made in a language he did not understand and if he did not know that he was being accused” (People v Lewis, 238 NY 1, 5; see also, Annotation, 87 ALR3d 706, 717; Fisch, New York Evidence §§ 792, 794 [2d ed 1977]; McCormick, Evidence § 270, at 800-801 [3d ed 1984]).
In the instant case, the interrogating officer admitted he could not say that defendant understood him; yet, he was permitted to describe defendant’s reaction which was, at best, equivocal. This description of defendant’s reactive gesture was inadmissible because no proper foundation was established. We need go no further in this case to decide whether, as defendant urges, the reaction could be inadmissible as being the equivalent of silence (see, e.g., People v Rutigliano, 261 NY 103).
Moreover, the prosecutor’s summation comment on the shrug, characterizing it as an indicator of defendant’s guilt, compounded the serious error in admitting the "evidence” at all (People v Christman, 23 NY2d 429; see also, People v Dawson, 50 NY2d 311, 319; contrast, People v Davis, 61 NY2d 202 [prosecutor’s comment allowed when defendant puts post-arrest silence into issue]).
The initial jury charge on forcible compulsion defined that element of the crime charged as it existed at the time of trial. "Statutes that change the rules of evidence so as to require a lesser amount of evidence or evidence of different facts in order to convict are ex post facto” in nature (People v Nival, 33 NY2d 391, 396). The trial court’s attempted corrective charge of the higher standard of forcible compulsion did not cure the error because the jury was not told to disregard *435 the earlier erroneous charge and to apply only the subsequent correct charge. Being left on their own to choose constituted reversible error as it affected the central issue of consent versus compulsion. "[T]he charge on the law concerning that subject should have been clear and unambiguous. Instead, it was contradictory and must have been perplexing and confusing to an attentive juror. Despite the fact that it was inadvertent, such a mistake in charging the law * * * necessitates a reversal of the judgment of conviction” (People v Kelly, 302 NY 512, 517; see also, People v Young, 65 NY2d 103, 109).
. [3] The trial court’s failure to provide the requested read-back of relevant cross-examination testimony of the victim before accepting the jury’s verdict capped this unfortunate conglomeration of errors. "Not every failure to comply with a jury’s request for information during deliberation is reversible error. (People v. Miller, 6 N Y 2d 152, 156; People v. La Marca, 3 N Y 2d 452, 461.) The test is whether the failure to respond seriously prejudiced the defendant. (People v. Jackson, 20 N Y 2d 440, 454-455; People v. Cooke, 292 N. Y. 185, 188.)” (People v Bauer, 32 AD2d 463,. 475, affd 26 NY2d 915.) While CPL 310.30 allows the court discretion in responding to a jury request, the court "must respond meaningfully to the jury’s inquiries” (People v Almodovar, 62 NY2d 126, 131, citing People v Malloy, 55 NY2d 296, 301; People v Gonzalez, 293 NY 259, 262). In this case, the court’s response was not meaningful because it was no response at all. It seriously prejudiced the defendant because of the nature of the charges and the intertwined issues.
Each of the errors in this case supports reversal; taken together, they compel this outcome.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.