94 N.Y.2d 307 (1999)
726 N.E.2d 468
704 N.Y.S.2d 916
THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v.
RANDY S. CAMPNEY, Appellant.
Court of Appeals of the State of New York.
Argued November 16, 1999.
Decided December 21, 1999.
*308 Gregory V. Canale, Glens Falls, for appellant.
*309 Sterling T. Goodspeed, District Attorney of Warren County, Lake George (Marcy I. Flores of counsel), for respondent.
Chief Judge KAYE and Judges LEVINE, CIPARICK, WESLEY *320 and ROSENBLATT concur with Judge BELLACOSA; Judge SMITH dissents and votes to reverse in a separate opinion.

*310 OPINION OF THE COURT
BELLACOSA, J.
Defendant urges that circumstantial proof is not permissible to allow an inference of assent to or adoption of a third party's statement. This Court rejects defendant's argument. Applying standard principles, we conclude that the trial court appropriately permitted the jury to consider whether defendant adopted his accomplice brother's written statement. The order of the Appellate Division should, therefore, be affirmed.
A Stewart's convenience store was burglarized on May 23, 1996. Thereafter, in connection with the burglary investigation, defendant Randy Campney and his younger brother, Burton Campney, were arrested and taken to State Police barracks for questioning. Defendant invoked his right to counsel and refused to speak with the officers. He was placed in a room, with one wrist handcuffed to a ring on the wall. Burton was interrogated elsewhere and gave a statement detailing how the two brothers burglarized the store. Burton's statement was reduced to writing, but before he would sign it, he asked to speak with his brother, defendant-appellant here.
Accommodating Burton's request, the officers brought him to the room where defendant was being held. The brothers conferred there privately for 10 to 15 minutes. When the investigators returned, they observed defendant holding Burton's written statement. An officer, addressing himself solely to Burton, asked Burton if he was ready to sign the statement. Burton, in turn, asked his brother what he should do. Defendantstill holding the statementreplied, "You might as well sign it, you already told them all about what happened." After this utterance, defendant handed the paper back to Burton, who thereafter signed it.
Defendant was indicted for burglary in the third degree. He moved to suppress his utterance, made in response to Burton's question to him. The court denied the suppression motion, ruling that a foundation was laid for admission of the statement. The court also concluded that the statement was a spontaneous response to a question posed by Burton.
At defendant's trial, one of the officers testified about defendant's exclamation. Burton's written statement was also *311 admitted into evidence as an adoptive admission by defendant. Burton, who was indicted for acting in concert with defendant in the burglary and who had already pleaded guilty, was called as a prosecution witness. When he began to testify that he alone had committed the crime, the prosecution was permitted to treat him as a hostile witness and to use his written statement for impeachment. Over defense counsel's objection, the court also concluded that the prosecution had a good-faith basis for calling Burton as a witness.
Following summations, the court instructed the jury that before it could consider defendant's utterance as an adoption of Burton's written statement, it had to find that defendant in fact made the response. The jury was further instructed that it had to satisfy itself beyond a reasonable doubt that defendant, by making the response, adopted Burton's statement as his ownthe document he held in his hand at the very time he made his response. The court concluded these instructions by stating that, only after these two criteria were met, could the jury consider and weigh defendant's utterance as an adoptive admission of Burton's statement. The jury convicted defendant of burglary in the third degree and he was sentenced by the court as a second felony offender.
The Appellate Division, with one Justice dissenting, affirmed. The court concluded that the trial court did not err in admitting Burton's confession into evidence during the People's case-in-chief. The Appellate Division reasoned that County Court (in determining whether an appropriate foundation had been established) and the jury (in determining whether defendant adopted Burton's statement) were entitled to draw reasonable inferences from the direct evidence presented, including that the brothers had discussed the statement, and that defendant had read it and adopted it as his own. The dissenting Justice granted leave to appeal to this Court. We are persuaded that the rulings at both lower courts are correct.
Generally, an adoptive admission is allowed when a party acknowledges and assents to something "already uttered by another person, which thus becomes effectively the party's own admission" (4 Wigmore, Evidence § 1069, at 100 [Chadbourn rev] [emphasis in original]). This Court has cautioned that "[a]n individual's reaction to a[n] * * * accusatory query is inadmissible as evidence of guilt, state of mind or as a demonstrative act unless at the threshold the People demonstrate that the person heard the assertion and comprehended its implications" (People v Lourido, 70 NY2d 428, 433 [emphasis *312 added]). Thus, manifestations made in response or reaction to an accusatory overture, which may be generally inadmissible, may be received into evidence, nevertheless, to establish "a relevant demonstrative response of the affected party" (id.).
The determination whether a threshold foundation has been established for the admissibility of the declaration or manifested act is made by the trial court, in light of "all the facts and circumstances surrounding the incident," while the "value or effect of this evidence" is weighed by the jury (People v Ferrara, 199 NY 414, 430). That is a key differentiation and demarcation to bear in mind for application of pertinent principles to this case.
In People v Ferrara (supra), the Court considered an accomplice's declaration that defendant was the person who had committed a part of the crime charged. It held that defendant's response of shrugging his shoulders was admissible because defendant heard the statement, had knowledge of what was said, and was not prevented from replying to it (People v Ferrara, supra, 199 NY, at 430). These indicia may be met by assaying the circumstances surrounding the defendant's manifestation and determining whether the act signaled an approval of the statement (see, id.; 2 McCormick, Evidence § 261, at 164 [5th ed 1999] [restrictively defining adoptive admission "to apply to evidence of other conduct of a party manifesting circumstantially the party's assent to the truth of a statement made by another"] [emphasis added]). Thus, circumstantial evidence may be used, as the dissent acknowledges, to determine the threshold requirement as to whether defendant apprehended the statement and understood its implications.
In the instant case, defendant and his brother were left alone to confer for 10 to 15 minutes, at Burton's specific request, after he made a full confession of joint criminal responsibility for the crime under investigation. Defendant was observed holding Burton's unsigned, written statement after the private meeting, when the police officers reentered the room. At the same time, defendant responded to Burton's request for advice as to whether he, Burton, should sign the statement with, "You might as well sign it, you already told them all about what happened." Based on these circumstances, we do not agree with the dissent's conclusion that the People presented insufficient evidence for the jury to infer that defendant read Burton's statement. The trial court is the proper forum, in any event, to which that factual and inferential weighing responsibility for such matters is assigned in the first *313 instance. That court had enough before it to deduce that defendant had read or been informed of the contents of the statement, understood its implications, and affirmatively adopted the statement as his own. The foundation in this case is, therefore, satisfied, allowing defendant's utterance, with respect to the brother's written statement, to be placed before the jury so that the jury might weigh the import, along with its other instructions and responsibilities.
Defendant's contention that "circumstantial evidence" can never be used to justify admission of the statement finds no support in the authorities or in sound logic. When an adoptive admission involves defendant's acquiescence by silence, this Court has noted that "[t]here are circumstances in which the declarations of persons made in the presence of an accused are competent; but they are regarded as dangerous and should always be received with caution and should not be admitted unless the evidence clearly brings them within the rule" (People v Conrow, 200 NY 356, 367; see also, People v Koerner, 154 NY 355, 374, quoting Child v Grace, 2 Car & P 193, that "`Really it is most dangerous evidence'"; People v Kennedy, 164 NY 449, 456-457; see also, People v Allen, 300 NY 222, 225). "Clear evidence" does not, however, bar circumstantial evidence outright.
The "danger" to which this Court adverted, however, is avoided when, as here, a defendant explicitly manifests an awareness of a statement and acceptance of the import of its contents (cf., People v Woodward, 50 NY2d 922, 923; see also, 2 Wright, Federal Practice and Procedure: Crim 2d § 413, at 497 [statements may be admitted into evidence as adoptive admissions where "defendant understood and unambiguously assented to the statements"]). The cautions articulated in cases involving acquiescence by silence arise from the potential to manufacture evidence, the ambiguity of the inference of a defendant's silence, and the possibility of admitting a damaging statement on the basis of silence (see, e.g., 2 McCormick, Evidence, op. cit., § 262, at 168). Those dangers are not present here where a verbalized response is involved, not a failure to speak. Thus, we disagree with the dissent's assertion that the policy rationale of prior cases, involving admissions by silence, bars the admission of the vocalized response in this case. Moreover, we have not overlooked the precedents but have applied them circumspectly. The record in this case contains sufficient circumstantial evidence to support the foundation for a jury to weigh and to attribute knowledge and responsibility for the brother's statement to defendant.
*314 Defendant alternatively argues that his statement should have been suppressed because it was acquired in violation of his invoked right to counsel. Spontaneous utterances may be received into evidence, despite a request for counsel, upon a showing that "they were in no way the product of an `interrogation environment', the result of `express questioning or its functional equivalent'" (People v Stoesser, 53 NY2d 648, 650, quoting Rhode Island v Innis, 446 US 291, 300-301; see also, People v Grimaldi, 52 NY2d 611, 617; People v Maerling, 46 NY2d 289, 301-303). Here, defendant yielded his "give-it-up-it's-all-over" advice in response solely to his brother's plea for guidance. Defendant's spontaneous capitulation in these circumstances falls within this Court's admissible utterance jurisprudence. The argument that the brothers' activity and conversation somehow violated defendant's previously invoked right to counsel is without merit.
Defendant's other contentions have been considered and do not merit explication.
Accordingly, the order of the Appellate Division should be affirmed.
SMITH, J. (dissenting).
Because the trial court erroneously admitted into evidence, as an adoptive admission, a written confession by defendant's brother implicating defendant, and defendant's response to his brother's inquiry regarding whether he should sign the confession, I dissent.

I.
In September 1996, defendant Randy Campney and his brother Burton were arrested for the burglary of a Stewart's convenience store committed on May 23, 1996 in the Town of Chester, Warren County. Both defendant and Burton were taken to the police station for interrogation. Defendant immediately invoked his right to counsel.
Burton gave police a statement detailing how he and defendant had burglarized the store. The statement was reduced to a writing and Burton was asked to sign it. Burton requested the opportunity to first speak with defendant who was located in another interrogation room. Once there, Burton privately conferred with defendant for approximately 10-15 minutes. Thereafter, two officers returned to the interrogation room, observed defendant holding the written statement and asked Burton whether he was prepared to sign the statement. Burton, in turn, asked defendant whether he should sign, to which *315 defendant replied, "You might as well sign it, you already told them all about what happened." Defendant and Burton were subsequently indicted for burglary in the third degree.
Defendant moved to suppress Burton's written confession and defendant's response to Burton's inquiry regarding whether Burton should sign it. At the hearing, the People called two officers as witnesses. Each testified that he neither heard the conversation between defendant and Burton nor saw defendant read the statement. Both testified, however, that defendant was holding the written statement when they entered the interrogation room. Moreover, one officer could not attest to defendant's response when Burton was asked whether he would sign the written confession. Defense counsel asked and the officers acknowledged that defendant had invoked his right to counsel prior to the time he allegedly responded to Burton's question regarding whether he should sign the confession.
Defendant also testified at the suppression hearing. He testified that he never told Burton to sign the statement, stating, "That is ludicrous. I never would have said something like that if I had known what was on that paper." He stated that he had not read Burton's statement and did not know its contents. Instead, defendant testified that when he and Burton conferred, he was just trying to find out "what had happened" because Burton appeared "confused" and "disoriented." Again, defense counsel inquired whether defendant had invoked his right to counsel at the time he allegedly made the statement. Defendant responded in the affirmative.
At the conclusion of the hearing, the Judge credited the testimony of the officers and found that a proper foundation was laid for the admission of Burton's written statement. The court found that the statement was admissible, not as a codefendant's statement, but rather as "a statement given by a co-defendant that has been adopted, if the jury believes the facts of this case, it's been adopted by the other defendant." The court further stated, "I will give * * * [the jury] an instruction as it relates to the fact, whether or not the defendant did in fact say go ahead and sign it. And secondly, by so stating, did he adopt as his own the admission contained in Burton Campney's statement. There is obviously a dispute to what happened, but that is what juries are for."
During trial, the People called Burton to testify, in contravention of their initial position not to call him as a witness. Once on the witness stand, Burton recanted his written confession, *316 proclaiming that he committed the burglary alone. Treating Burton as a hostile witness, the People used his written confession to impeach his credibility.
At the close of the evidence, the court charged the jury regarding the use of Burton's written statement and defendant's subsequent response. The court instructed,
"you [the jury] must be satisfied beyond a reasonable doubt that the statement number 1, attributed to the defendant was, in fact, made by him and number 2, that by making such statement the defendant adopted as his own the statement of Burton Campney. * * * [I]f you have reasonable doubt as to either or both of those you must disregard the [defendant's] statement and the statement of Burton Campney and give it no weight whatsoever, as it has no binding effect on the defendant."
The jury returned a guilty verdict and defendant was sentenced accordingly.
On appeal, defendant argued that the trial court committed reversible error by, among other things, permitting Burton's written statement into evidence and defendant's statement as an adoptive admission. The Appellate Division affirmed, with one Justice dissenting.

II.
An adoptive admission occurs when evidence exists to support the conclusion that an accused assents to the truth of a statement made by another (2 McCormick, Evidence, § 261, at 172 [4th ed 1992]). Thus, when a statement or declaration which tends to incriminate one accused of a crime is made in the presence and hearing of that person and such a statement is not denied or objected to by the accused, the statement, as well as the accused's failure to deny the statement is generally admissible as evidence demonstrating his or her acquiescence to the truth of the statement (People v Allen, 300 NY 222, 225). While the cases cited from this jurisdiction address adoptive admissions by silence, the accused's failure to deny the declarant's statement is the significant factor. Thus, "an equivocal or evasive response may similarly be used against the party" either as an adoptive admission by silence or an express assent (2 McCormick, Evidence, op. cit., § 262, at 176).
The statement made in the presence of the accused is received into evidence for the limited purpose of establishing *317 the accused's response thereto (People v Lourido, 70 NY2d 428; People v Kennedy, 164 NY 449). Such evidence is inadmissible, however, unless a threshold foundation is laid establishing that the accused "heard the assertion and comprehended its implications" (People v Lourido, 70 NY2d, supra, at 433; People v Allen, 300 NY, supra, at 225 [accusation must be "`fully known and fully understood'"]; People v Cascone, 185 NY 317, 324; People v Smith, 172 NY 210, 232; People v Kennedy, 164 NY, supra, at 456). Moreover, the statement must be one which, if made in the presence of the accused, he or she, under the circumstances and having the ability or opportunity, would deny (People v Allen, 300 NY, supra, at 225).
Central to the disposition of the instant case is whether the People properly laid the foundation for introducing Burton's written confession and defendant's response as an adoptive admission by establishing that defendant heard, or in this case at least read, the written confession and fully "comprehended its implications" (People v Lourido, 70 NY2d, supra, at 433; People v Kennedy, 164 NY, supra, at 457; People v Robinson, 140 AD2d 644, 645). This Court has consistently reversed a conviction where insufficient evidence exists to establish that a defendant heard and understood a statement from which his or her reaction was deemed an admission of the truth and veracity of that statement. For example, in People v Lourido (70 NY2d 428, supra), this Court held that the trial court committed reversible error when it admitted into evidence the defendant's demonstrative response to a police officer's accusatory query when the People failed to establish that the defendant understood English (see, People v Cascone, 185 NY 317, 329-330, supra; compare, People v Ferrara, 199 NY 414, 424 [accomplice's statement, "That's the man that done the cutting," and the defendant's nonverbal reaction were admitted into evidence when the People established that the defendant heard the statement, understood the import of the words and was not prevented from responding]; see also, People v Lewis, 238 NY 1, 5).
In this case, it is undisputed that the People failed to establish that defendant read Burton's statement. Moreover, no one heard the conversation between defendant and Burton. Thus, it is impossible to determine whether Burton fully discussed the written statement with defendant and whether Burton told defendant that he had, in fact, implicated him in the statement (see, e.g., People v Woodward, 50 NY2d 922, 923). The People's conclusory assertion that defendant "clearly heard and fully *318 comprehended the effect of the statement" is insufficient to overcome its threshold burden of establishing that contention (see, People v Lourido, supra, at 433) . Therefore, without evidence establishing that defendant heard or read the statement and understood its content, defendant's failure to contradict the assertions therein cannot justify an inference of his acquiescence in the statement's truth.
Moreover, the Appellate Division's conclusion that the jury was entitled to "draw whatever reasonable inferences flowed from the direct evidence presented" (256 AD2d 1058, 1059) overlooks this Court's holding in Lourido which requires that a foundational basis exist before a statement and an adoption thereof are admitted into evidence. In People v Cascone (185 NY, supra, at 329) we stated that "it must plainly appear" from the circumstances that the language, or in this case the written statement, was "fully understood by the party before any inference can be drawn" from the defendant's response (emphasis supplied; see also, People v Allen, 300 NY, supra, at 225-226 [such evidence "is never to be admitted unless clearly within the rule"]). Here, the trial court had the initial duty of making the threshold determination regarding the statement's admissibility before any inferences were permissibly drawn. Thus, inasmuch as the facts here do not plainly appear to establish that defendant read and understood the statement, it was reversible error for the trial court to admit Burton's statement and defendant's response into evidence (People v Kennedy, 164 NY, supra, at 456-457 [adoptive admissions "should not be admitted unless the evidence clearly brings them within the rule"]; People v Rhodes, 96 AD2d 565, 566; see also, 2 Wright, Federal Practice and Procedure: Crim 2d § 413 [before adoptive admissions are admitted into evidence, it "must appear that defendant understood and unambiguously assented to the statements"]).
Indeed, we have stated that despite the competency of declarations made in the presence of an accused, such evidence is "regarded as dangerous, and should always be received with caution" (People v Kennedy, supra, at 456-457). Tacit adoptions are viewed as dangerous because of the ambiguity of silence. Accordingly, this Court has established the foundational safeguards which serve to minimize the misuse of this type of evidence. The policy rationale underlying this Court's warning against the use of adoptive admissions is illustrated in the instant case. Because the People failed to demonstrate that defendant heard or read Burton's statement and understood the *319 implications against him, it is impermissible to conclude that defendant adopted that written statement as his own.
Evidence exists to support the conclusion that defendant's words were not an adoption of Burton's statement. Significantly, it is undisputed that defendant immediately invoked his right to counsel upon arrest. Acquiescing in a written statement which incriminated him would be completely contrary to the invocation of his right to counsel. Indeed, the People's argument that defendant was a "sophisticated defendant" only buttresses this conclusion. Thus, absent the foundational showing that defendant heard or read the statement and understood the implications of advising Burton to sign the confession, the statement should have been suppressed.
Even assuming that circumstantial evidence may be used to indicate an adoptive admission, that evidence here was inadequate.[*] It is clear that "the circumstantial facts proved must exclude every hypothesis but guilt" (People v Ford, 66 NY2d 428, 433). Where two inferences may be drawn from the evidence, one consistent with guilt and the other consistent with nonguilt, the jury must draw the inference of nonguilt (id., at 441-443). Here, if defendant made the statement attributable to him and told his brother that he might as well sign the statement, it certainly does not lead irresistibly to the conclusion that defendant was admitting his guilt.
Moreover, to date, when this Court has permitted a statement as an adoptive admission, it has been a statement that accused a defendant, and a defendant alone, of the act (see, e.g., People v Ferrara, 199 NY 414, supra). Here, the statement was an admission by defendant's brother which implicated defendant.
Finally, Burton's written confession implicating defendant was the only evidence linking defendant to the crime. Thus, it cannot be concluded that any error in admitting this evidence was harmless (see, People v Crimmins, 36 NY2d 230; People v Benanti, 158 AD2d 698; Prince, Richardson on Evidence § 1-208, at 14-15 [Farrell 11th ed]). Accordingly, I vote to reverse the order of the Appellate Division.
Order affirmed.
NOTES
[*] The dissent does not contend that an adoptive admission can never be proved by circumstantial evidence. Rather, in this case, the circumstantial evidence is insufficient to prove that the defendant's statement was an admission of his guilt.