People v Leonard (2019 NY Slip Op 53931)





People v Leonard


2019 NY Slip Op 53931


Decided on November 27, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 27, 2019

108753

[*1]The People of the State of New York, Respondent,
v
Howard A. Leonard, Appellant.

Calendar Date: October 17, 2019

Before: Garry, P.J., Clark, Mulvey, Aarons and Pritzker, JJ.


David M. Abbatoy Jr., Rochester, for appellant.
Matthew Van Houten, District Attorney, Ithaca (Andrew J. Bonavia of counsel), for respondent.

Matthew Van Houten, District Attorney, Ithaca (Andrew J. Bonavia of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the County Court of Tompkins County (Rowley, J.), rendered January 25, 2016, upon a verdict convicting defendant of the crimes of attempted sexual abuse in the first degree and endangering the welfare of a child.
In January or early February 2014, defendant allegedly inserted his finger into the victim's vagina on one occasion and, on another occasion, laid the victim on her back and tried to unzip her pants. The victim was then 13 years old. Six months later, the victim disclosed these incidents to her mother. Thereafter, defendant was charged by indictment with sexual abuse in the first degree, attempted sexual abuse in the first degree and endangering the welfare of a child. After a jury trial, he was convicted of attempted sexual abuse in the first degree and endangering the welfare of a child. The jury did not reach a verdict on the charge of sexual abuse in the first degree, and that charge was subsequently dismissed. Defendant was sentenced to a prison term of four years, followed by five years of postrelease supervision, on the conviction for attempted sexual abuse in the first degree and to a concurrent jail term of one year on the conviction for endangering the welfare of a child. Defendant appeals.
Defendant contends that the verdict is against the weight of the evidence because the victim's testimony was rendered incredible by the six-month interval before she reported the incidents and by alleged inconsistencies in her testimony. The victim testified that she was very close to defendant's wife and thus visited defendant's home frequently throughout her childhood. She spent more time with the wife than with defendant because defendant, who worked as a truck driver, was often away. She testified that, in January or February 2014, while the wife was out shopping, defendant pulled her leg over to him, reached up her shorts and put his finger in her vagina, telling the victim that "it would feel good." The victim told defendant to stop and that she did not like it, and he stopped after she asked him to do so "[a] couple times." The victim then went outside and waited on the porch until the wife returned. She testified that she did not say anything to the wife because she was afraid the wife would not believe her.
A week later, the victim returned to the house for another visit with the wife. She testified that she believed that defendant was away but that he proved to be present. The wife went outside to hang laundry while defendant and the victim were sitting in the living room.[FN1] Defendant then got up from his chair, pulled the victim's leg to cause her to lie on her back on the couch and tried to unzip her pants. The victim yelled for him to stop and swung her arms at him, and he stopped and returned to his chair. When the wife came in, the victim asked to be taken home, and the wife did so. The wife asked why the victim wanted to go home, but the victim did not tell her.
The victim testified that she did not visit defendant's home again after these incidents. Defendant subsequently broke his leg in a work injury, but the victim did not visit him or send him a get well card. She testified that she did not tell anyone what had happened at first because she did not think she would be believed. However, during an argument between the victim and her mother in August 2014, the mother suggested that the victim should stay with defendant and his wife for a cooling-off period, as the victim had done before for several weeks in 2013. The victim then told the mother what had happened, and her mother immediately took her to the police station to make a report.
The victim's mother testified that the victim had been very close to defendant's wife throughout her childhood, visited at least every two weeks and went "everywhere" with the wife. However, in about February 2014, the victim stopped visiting defendant's home and never went there to stay again. The mother remembered visiting defendant after he broke his leg in February 2014, but could not remember whether the victim had gone with her. She testified that defendant and the wife called several times to ask why the victim was not visiting. The victim told the mother that she was busy and preferred to spend time with her friends and to play sports. The mother did not learn the true reason for the victim's reluctance to visit until she disclosed the abuse during the August 2014 argument.
Defendant took the stand, denied that he had touched the victim improperly and testified that he was never alone with her in January or February 2014. He presented logs and payroll documents indicating that he was away most of the time during January 2014 and until he broke his leg in the middle of February 2014, but was home for part of the day on Saturdays and all day on Sundays during that period. He stated that a friend of the wife moved in with him and the wife during this period and that the friend and the wife were always present when the victim was there. The wife testified that the victim always accompanied the wife when she went to the store or hung laundry in January and February 2014 and that she did not recall any occasion when she left the victim alone with defendant during that time. She further stated that her friend moved into the home during the last week of January 2014 and that the victim visited after the friend moved in. The wife's friend testified that she moved to defendant's home on January 25, 2014, that the victim visited two or three times after that and that the victim visited after defendant broke his leg. The victim, however, testified that the friend was never present during her visits and that she had never met the friend.
Contrary to defendant's argument, the six-month delay before the victim disclosed the abuse to her mother does not give rise to a presumption that her complaint was false. Defendant's reliance upon the prompt outcry doctrine as the basis of this argument is misguided. The prompt outcry doctrine is an evidentiary rule permitting the admission of hearsay evidence that a victim promptly complained of a sexual assault on the ground that "some jurors would inevitably doubt the veracity of a victim who failed to promptly complain of a sexual assault" (People v McDaniel, 81 NY2d 10, 16-17 [1993]; see People v Rice, 75 NY2d 929, 931 [1990]; People v Stone, 133 AD3d 982, 984 [2015]; Guide to NY Evid rule 8.37, Prompt Outcry). However, there is no legal presumption that a victim who does not make a prompt complaint must not be telling the truth. Instead, the victim's delay in disclosure — like the alleged inconsistencies in her testimony and the conflicting accounts of events given by the victim and by defendant and his witnesses — gave rise to credibility issues that were within the jury's province to resolve (see People v Olson, 110 AD3d 1373, 1374 [2013], lv denied 23 NY3d 1023 [2014]; People v Borthwick, 51 AD3d 1211, 1214 [2008], lv denied 11 NY3d 734 [2008]; People v Thompson, 267 AD2d 602, 604 [1999], lv denied 94 NY2d 953 [2000]). Had the jury disbelieved the victim's testimony, a different verdict would not have been unreasonable. Nevertheless, "[t]he jury chose to credit the testimony of the victim[] and other corroborating proof and, after according deference to that determination and weighing the conflicting proof ourselves, we cannot say that the ensuing verdict was against the weight of the evidence" (People v Thornton, 141 AD3d 936, 938 [2016], lv denied 28 NY3d 1151 [2017]; see People v Horton, 173 AD3d 1338, 1340 [2019], lv denied 34 NY3d 933 [2019]; People v Fernandez, 106 AD3d 1281, 1283-1284 [2013]).
Defendant next contends that a new trial is required because of the prosecutor's allegedly prejudicial remarks during the summation and also because of alleged errors by County Court in crafting the jury charge and handling jury notes. None of these claimed errors were preserved for appellate review, but we will nevertheless examine them, as defendant also contends that he was deprived of the effective assistance of counsel by his trial counsel's failure to raise appropriate objections. Initially, defendant's trial counsel did not object to any of the remarks in the prosecutor's summation that defendant now contends deprived him of a fair trial (see People v Jackson, 160 AD3d 1125, 1129 [2018], lvs denied 31 NY3d 1149 [2018]; People v Leonard, 83 AD3d 1113, 1117 [2011], affd 19 NY3d 323 [2012]; People v Lazzaro, 62 AD3d 1035, 1036 [2009]). No modification would have been warranted if these arguments had been preserved, as we would have found that the challenged remarks, in every case, were fair responses to the arguments made during defendant's summation, fair comments on the evidence or both (see People v Jackson, 160 AD3d at 1129; People v Johnson, 151 AD3d 1462, 1465-1466 [2017], lv denied 30 NY3d 1106 [2018]; People v Scippio, 144 AD3d 1184, 1187-1188 [2016], lv denied 28 NY3d 1150 [2017]).[FN2] Likewise, even if defendant's contention that County Court improperly instructed the jury that defendant was an interested witness had been preserved by an appropriate objection, we would have found no error, as it is well established that such an instruction may be given where, as here, the charge is balanced, fair and understandable (see People v Agosto, 73 NY2d 963, 967 [1989]; People v Hebert, 68 AD3d 1530, 1532 [2009], lv denied 14 NY3d 841 [2010]).
Defendant likewise failed to preserve his appellate contention that County Court gave inadequate responses to two jury notes. Notably, defendant makes no claim that his counsel did not have "meaningful notice" of the contents of either note (People v O'Rama, 78 NY2d 270, 277 [1991]; see CPL 310.30). The record reveals that defendant's counsel was fully apprised of the verbatim content of both notes and actively agreed with the court's proposed responses. Thus, neither alleged violation constitutes a mode of proceedings error, and preservation for appellate review was required (see People v Mack, 27 NY3d 534, 537 [2016]; People v Robtoy, 144 AD3d 1190, 1193 [2016], lv denied 28 NY3d 1150 [2017]).
The first jury note requested "some clarification beyond" County Court's original instruction on the definition of reasonable doubt, which had mirrored the language of the criminal jury instructions (see CJI2d[NY] Reasonable Doubt). Defense counsel agreed with the court's proposal to read the instruction again and advise the jury that the court could do nothing more to amplify it. Had counsel objected, we would have found no error, as "[w]here, . . . after considerable deliberation, the jury requests clarification concerning the meaning of reasonable doubt and the original instruction is adequate, it is not error for the [court], as [it] did here, to respond to the request by rereading that instruction" (People v Malloy, 55 NY2d 296, 298 [1982], cert denied 459 US 847 [1982]).
The second jury note asked, in pertinent part, "[D]oes the victim have an option not to testify without recanting her story? Could [the victim] have chosen not to press charges or not appear in court or was she required by law?" After a lengthy discussion with counsel, County Court proposed to provide an "overview" of the legal process that, among other things, informed the jury that the victim was not obliged to give a statement but, having done so, was required to appear at trial. Although defendant now contends that this response was prejudicial in several respects, his trial counsel actively participated in crafting the court's response and suggested the addition of certain language that appellate counsel now finds objectionable. Had the issue been preserved for our review, we would have found that the information that the court provided was necessary to provide a meaningful response to the jury's inquiry and accurately described the legal process and, thus, that the court did not abuse its "significant discretion in determining the proper scope and nature of the response" (People v Taylor, 26 NY3d 217, 224 [2015]; see People v Steinberg, 79 NY2d 673, 684-685 [1992]; People v Arce, 70 AD3d 1196, 1197-1198 [2010]).
Finally, defendant's contention that he did not receive the effective assistance of counsel is premised entirely upon his claim that his counsel should have objected to the alleged errors described above. Given our conclusion that no such errors occurred, the assertion has no merit; failure to make an argument, objection or motion that has little chance of success does not constitute the ineffective assistance of counsel (see People v Caban, 5 NY3d 143, 152 [2005]; People v Bostic, 174 AD3d 1135, 1138 [2019]). The record reveals that defense counsel made appropriate objections, pursued a cogent theory of defense and obtained the dismissal of the most serious charge against defendant. We find that defendant received meaningful representation (see People v Pitt, 170 AD3d 1282, 1286 [2019], lv denied 33 NY3d 1072 [2019]; People v Vanderhorst, 117 AD3d 1197, 1201 [2014], lv denied 24 NY3d 1089 [2014]; People v Wiltshire, 96 AD3d 1227, 1228-1230 [2012], lv denied 22 NY3d 1204 [2014]).
Clark, Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The victim testified that the wife hung laundry outside in the winter because she did not have a working dryer, and the wife confirmed that she hung laundry outside on nice days in the winter.

Footnote 2: To the extent that defendant argues that the prosecutor improperly bolstered the victim's credibility by eliciting certain testimony during her direct examination, the claim is unpreserved (see People v Vanbergen, 68 AD3d 1249, 1250-1251 [2009], lv denied 14 NY3d 806 [2010]). No modification would have been warranted if the issue had been properly before us.